CHISHOLM-RYDER COMPANY, INC., Respondent, v SOMMER & SOMMER, Appellant.

Fourth Department, November 2, 1979

## APPEARANCES OF COUNSEL

*Sommer & Sommer (Kenneth Sommer* and *Peter K. Sommer* of counsel), appellant *pro se.*

*Garvey, Magner, Sullivan & Love (Michael Menard* and *James A. Garvey* of counsel), for respondent.

## OPINION OF THE COURT

SIMONS, J.

Defendant is a patent law firm and plaintiff is a manufacturer and seller of agricultural machines and food processing equipment. For the last 18 years defendant has represented plaintiff on patent matters in the United States and various foreign countries. During that time it was the practice of the parties to maintain a running account for services rendered to the client and as the services were performed, defendant submitted periodic statements to plaintiff who then made payments on account. In 1977 defendant became concerned over the amount of plaintiff's indebtedness and when plaintiff was unwilling to arrange for payment in full, it withdrew as plaintiff's counsel. Thereafter plaintiff initiated a special proceeding against defendant to obtain its files and records. Special Term ordered the turnover on condition that plaintiff post a $100,000 bond to secure defendant's fees. It converted the proceeding to the present action at law to permit defendant to interpose counterclaims for professional services. Although an appeal from that turnover order was perfected, the files and records have been delivered to plaintiff and it is not now challenged. This appeal concerns only the dispute over the unpaid balance allegedly due defendant from plaintiff for professional services and disbursements.

■ ■ After the proceeding was converted to an action at law defendant answered and pleaded counterclaims for the sums due. Thereafter, it moved for summary judgment on the counterclaims, alleging an account stated, and it moved to strike plaintiff's reply.* Special Term denied the motion in all respects. In the absence of a motion for default judgment (CPLR 3215) and in the absence of prejudice to defendant, the court properly permitted the original reply to stand (CPLR 3026; Siegel, New York Practice, § 235, p 286). The order

---

* Plaintiff's original reply was served a day late and, although defendant's answer and counterclaims were verified, the reply was not. Defendant returned the reply pursuant to CPLR 3022 and plaintiff then submitted the same reply, late but verified.

denying summary judgment should be reversed, however, for plaintiff has established no question of fact to defeat defendant's claim of an account stated for professional services and disbursements which is past due.

■ An account stated is an agreement between the parties to an account based upon prior transactions between them with respect to the correctness of the separate items composing the account and the balance due, if any, in favor of one party or the other (see 1 NY Jur, Accounts and Accounting, §§ 5-7). In the case of an existing indebtedness, the agreement may be implied as well as express (cf. *Gurney, Becker & Bourne v Benderson Dev. Co.,* 47 NY2d 995, revg 62 AD2d 1165). An agreement may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time because the party receiving the account is bound to examine the statement and object to it, if objection there be. Silence is deemed acquiescence and warrants enforcement of the implied agreement to pay *(Rodkinson v Haecker,* 248 NY 480; *Steingart Assoc. v Sandler,* 28 AD2d 801). An agreement may also be implied if the debtor makes partial payment. The partial payment is considered acknowledgment of the correctness of the account *(Parker Chapin Flattau & Klimpl v Daelen Corp.,* 59 AD2d 375; *Rik Shaw Assoc. v Bronzini Shops,* 22 AD2d 769; see, also, *Milstein v Montefiore Club of Buffalo,* 47 AD2d 805, 806). An attorney may contract with his client on the cost of his past or future services, of course, and an account stated may exist between them *(Rodkinson v Haecker, supra,* pp 485, 489; *Parker Chapin Flattau & Klimpl v Daelen Corp., supra).* In the absence of fraud, mistake or other equitable considerations making it improper to recognize the agreement, it is conclusive.

In this case the unrebutted documentary proof annexed to defendant's moving papers convincingly establishes its claim. Over the years, it was defendant's consistent practice to perform professional services for plaintiff, many of them routine and recurring, and to submit periodic statements for these services. A balance was maintained with debits entered as additional services were performed and credits entered as partial payments were received from plaintiff. It does not appear that the account was paid in full at any time after 1973, however, and by late 1977 the balance due for professional services and disbursements totaled $106,422.40. On September 15 of that year counsel wrote plaintiff advising it

that the unpaid indebtedness could no longer be ignored and that prompt arrangements should be made to satisfy the bill. Plaintiff paid $10,000 on account eight days later but despite defendant's insistence no attempt was made to meet with defendant and arrange for payment in full. Two weeks later, an officer of plaintiff wrote defendant and referred to the September 15 bill. He questioned two disbursements totaling $660 which involved foreign patents (and the advisability of continuing the patent protection) and also a $150 item for advice involving litigation in Buffalo. No other comment was made about defendant's bill or its request for an early meeting to discuss payment. Defendant responded to this letter on October 14 by explaining the questioned items and, in the case of the $150 charge, offering to credit the account if the client considered the service unauthorized or if plaintiff was displeased with the advice received. Plaintiff's only response was to request that in the future foreign patent efforts or costs be reviewed before expenditures were incurred.

On December 30, 1977 defendant sent plaintiff's president a certified letter advising that the balance of the account was then $107,808.79 and complaining once more of plaintiff's failure to pay the bill or arrange for payment. Counsel stated that unless a meeting was scheduled by January 10, 1978, defendant intended to terminate its representation of plaintiff and notify the several courts in which litigation was pending. Additional copies of the letter were forwarded to the home of plaintiff's president and to plaintiff's comptroller to be hand delivered by the comptroller to the president. On January 24, 1978 $15,000 was paid "on account" and apparently a meeting between the parties was arranged. The president requested and obtained several postponements, however, and on February 3, 1978 defendant wrote him once again insisting that oral promises of payment were not acceptable, restating the balance of the account and demanding immediate payment with interest. Additional letters were sent to other officers of the corporation with copies of past correspondence and restating the balance of $92,808.79. There was subsequent correspondence between the parties but it does not appear that the amount of defendant's bill was ever questioned. Finally, when no payment was forthcoming, defendant notified plaintiff it was withdrawing as plaintiff's counsel and it notified the various courts that it no longer represented plaintiff.

Defendant proved that it performed extensive professional

services for plaintiff, that it advanced disbursements from its funds on plaintiff's behalf and that demands were made of plaintiff for payment. The amounts of the various items contained in the account were not questioned, except as to three relatively minor matters. These were satisfactorily explained by defendant and accepted by plaintiff and subsequently a further payment on account was made to defendant. Plaintiff's acquiescence in the account for several months and its two payments on account during the period of the dispute without questioning the balance constitute implied agreement as to the whole. Defendant is entitled to summary judgment in the amount of $92,808.79 with interest (see *Milstein v Montefiore Club of Buffalo,* 47 AD2d 805, 806, *supra*).

The order should be modified by reversing so much of it as denied defendant's motion for summary judgment, the motion should be granted, and the order should be affirmed in all other respects.

DILLON, P. J., CARDAMONE and WITMER, JJ., concur.

Appeal No. 1 [attorney's lien] Order unanimously affirmed.

Appeal No. 2 [attorney's fees] Order unanimously modified, and, as modified, affirmed, with costs to defendant.