**POLYGRAM, S.A., Plaintiff,**

v.

**32–03 ENTERPRISES, INC., Defendant.**

**No. 87 CV–4084.**

United States District Court,
E.D. New York.

Oct. 17, 1988.

David G. Barnes, Kathleen M. Kundar, Fox & Horan, New York City, for plaintiff.

Howard D. Bader, Arthur Neiss, Mannarino Bader Bloom Fischer & Woll, New York City, for defendant.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

Plaintiff is a French corporation which engages in the manufacture and marketing of records, tapes and compact discs. Defendant is a New York corporation which distributes plaintiff's products in the New York area. It is asserted by plaintiff that the defendant has failed to pay for merchandise ordered and delivered. Defendant contends that the products were defective and seeks to return the merchandise for a credit against its account.

In September and October of 1985, the defendant placed orders with the plaintiff for specific merchandise. Plaintiff delivered the goods in four shipments accompanied by printed invoices. Each invoice required payment for the goods listed within sixty days. Additionally, the invoice provided as "terms of sale" that:

3. Any claim concerning the goods, in order to be admissible by Polygram, must be made within three calendar months at the latest after delivery.

4. Return of goods will only be accepted in the case of wrongful delivery or defective merchandise other than

that caused by transport and if Polygram has given previous written authorization. Claims concerning defective goods, must be notified in writing to Polygram within three calendar months at the latest after delivery. Returned goods, if accepted are to be sent back carriage paid.

7. ... In any case of non-payment on the fixed date ... any sum due, even for future payment, will become immediately claimable by Polygram and will be subject to interest at the bank rate multiplied by 1.4.

The defendant did not object to the "terms of sale" nor propose any modifications. It should be noted that plaintiff and defendant have had prior dealings spanning the past decade without incident and that defendant's objection to the "terms of sale" was first raised after this action was commenced. The objection to the balance due was made orally to plaintiff, never being reduced to a written form. After several months delay in paying the bill, the defendant on April 25, 1986, executed and caused to be delivered to plaintiff four checks totalling 80,065 French francs. This was the entire amount due. Plaintiff duly presented the four drafts for payment. The drafts were not honored upon demand. Defendant asserts that the checks were not "stopped" as plaintiff contends but were returned "refer to maker" because they were payable in French francs instead of United States currency.

Plaintiff commenced this action asserting three alternative claims for relief: (1) a claim for goods sold and delivered but not paid for; (2) wrongful dishonor of unconditional drafts for a sum certain; and (3) a claim for an account stated created by a demand for payment and checks executed in response but not honored. Plaintiff now moves this Court pursuant to Fed.R.Civ.P. 56 for summary judgment based on these claims.

In its answer defendant admits that it received the goods but argues that the contract for the sale of the goods is unwritten and, therefore, unenforceable. Secondly, that custom and practice in the industry as well as the prior dealings between the parties permits a return of the defective

goods for credit. Defendant contends that it has returned defective goods to the plaintiff in the past and that the nature of business for a distributor of records and tapes requires that a liberal return policy whereby the manufacturer would accept returns far in excess of any stated return period is mandated. Finally, defendant asserts a counterclaim for the cost of the storage for the defective goods pending their return to plaintiff.

Fed.R.Civ.P. 56(c) permits a court to enter a summary judgment against a party if "there is no genuine issue as to any material fact and [when] the moving party is entitled to a judgment as a matter of law." The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party's burden on a motion for summary judgment is to show the court that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Additionally, "[i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact but to access whether there are factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is material if it resolves any issue properly raised by the parties, if it constitutes a legal defense, or is so essential that the party against whom it is decided will not prevail.

Plaintiff alleges that the defendant ordered and received its products but failed to pay the contract price. Defendant asserts (1) that the contract for the sale of goods between the parties is unwritten and, therefore, unenforceable by reason of the Statute of Frauds, and (2) the custom and practices of the industry and between the parties permits a return of defective goods for credit.

■ The New York Uniform Commercial Code specifically provides that "between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents" then it satisfies the statute of frauds unless written notice of objection to the confirmation is given within ten days. (N.Y.U.C.C. 2–201). The defendant received the invoice with the "terms of sale" expressly stated thereon. There was no written objection made by defendant to these terms to date. Therefore, the Statute of Frauds is satisfied and the contract is enforceable.

■ Alternatively, defendant argues that the customs and practices within the industry and between the parties permit a return of defective goods even after a stated "return" period. The defendant bases this position on essentially two premises, first, that a letter sent by plaintiff to defendant in 1980 permitted an open ended return policy. Secondly, due to the nature of the industry it is an absolute necessity for distributors to be allowed to send products back to the manufacturer after they receive them from the retailers and when there is a sufficient quantity to make it cost efficient.

N.Y.U.C.C. 2–208(2) states:

The express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of dealings and usage of trade.

This section has been interpreted by the state courts to permit evidence of trade usage or a prior course of dealings to supplement express terms (*Schubtex v. Allen Snyder*, 49 N.Y.2d 1, 6, 424 N.Y.S.2d 133, 399 N.E.2d 1154 (1979)), and where they are not inconsistent with the express terms of the contract. (*Division of Triple T v. Mobil Oil Corp.*, 60 Misc.2d 720, 731, 304 N.Y.S.2d 191 (Sup.Ct. Westchester County

1969) aff'd 34 A.D.2d 618, 311 N.Y.S.2d 961 (2d Dept.1970)). Defendant contends that the industry requires that an extensive period of time, on occasions in excess of a year, be allowed distributors to return defective products. This is contrary to the express "terms of sale" of the contract which permit only 90 days. Additionally, defendant has not produced any evidence which indicates that the return period in the industry is that extensive. There has been no waiver of the contractual rights of the plaintiff on the issue of the return period. Defendant has failed to pay for the goods as he is obligated to do. N.Y.U. C.C. 2–301, 2–607(1); *Draadindustrie NDI v. Grand Prestressed Corp.*, 466 F.Supp. 846, 851 (E.D.N.Y.1979) aff'd 614 F.2d 1289 (2d Cir.1979). A 90 day return period was assented to by defendant upon acceptance of the goods as an invoice stating that term was included with the delivery. *See* N.Y. U.C.C. 2–206. Accordingly, defendant's argument that trade usage supersedes express language in a contract is without merit.

■ Alternatively, defendant asserts that a 1980 letter from plaintiff to defendant permits an open ended return period. This argument is misplaced. N.Y.U.C.C. 2–202 provides that:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

In *Battista v. Radesi*, a wine wholesaler brought an action against a distributor for the balance due on an invoice. The invoice included the names and addresses of the parties, the date, a payment term of "net 45 days", a description, and the price for the goods. The court held that this was intended to be the final expression of the parties agreement and could not be contradicted by the distributor's assertion that the parties had agreed that no payments would be due until the entire inventory was

sold. 112 A.D.2d 42, 491 N.Y.S.2d 81 (4th Dept.1985). *See* also *General Motors Acceptance Corp. v. Fairway Dodge Sales, Inc.*, 80 A.D.2d 740, 437 N.Y.S.2d 171 (4th Dept.1981) (a prior or contemporaneous oral agreement between the parties does not establish a triable issue of fact. A writing intended by the parties to be the final and exclusive statement of their agreement may neither be contradicted nor supplemented by parol evidence). In *Matthew Bender, Inc. v. Taiswal*, the invoices for the sale of law books were received by defendant within a reasonable time after an oral contract for sale was negotiated. The invoices contained the names and addresses of the parties, the date, payment terms, price, description and on the reverse side of each invoice, a description of the sale which entitled the purchaser to return the merchandise within 30 days for full refund. The court found that the invoices represented the final written expression of the parties with respect to the terms included therein and was not to be contradicted by evidence of a prior agreement. References to a prior course of dealing between the parties led the court to opine that the references served only to reinforce plaintiff's argument that it had dealt with the defendant on prior occasions and that he had always honored his contract. 93 A.D. 2d 969, 970, 463 N.Y.S.2d 78 (3rd Dept. 1983). The circumstances in *Battista, General Motors* and *Matthew Bender* are very similar to the instant matter. Invoices were included with the delivery. The "terms of sale" provided for a 90 day return period. This was a term expressly stated and may not be contradicted by evidence of a prior agreement. This Court finds that the invoice was intended as the complete and exclusive statement of agreement between the parties. Moreover, the 1980 letter referred to by defendant in defense of his breach does not support the defendant's conclusion that it was excused from the 90 day return period. The letter simply states that credit will be given for returned or destroyed merchandise. Even if the letter was allowed to supplement the language of the contract it would not serve

defendant's purpose and excuse his performance.

■ Plaintiff's second cause of action is for an account stated. An account stated is an agreement, expressed or implied, that an examination of the account between the parties has occurred, a statement of that account has been asserted, and accepted as correct. This agreement reflects the amounts due on past transactions and may be implied by the sending of a statement by the creditor and the debtor's failure to dispute its correctness. *Nilsson Robbins v. Louisiana Hydrolec*, 854 F.2d 1538 (9th Cir.1988). *Pepper's Steel & Alloys Inc. v. Lissner Minerals & Metals, Inc.*, 494 F.Supp. 487, 496 (S.D.N.Y.1979); *Newburger–Morris Co. v. Talcott*, 219 N.Y. 505, 511–12, 114 N.E. 846 (1916); *Clune v. Healthco Medical*, 78 A.D.2d 914, 433 N.Y.S.2d 52 (3rd Dept.1980). Evidence of an account stated is, however, subject to refutation by proof of timely protest. *James Talcott, Inc. v. U.S. Tel. Co.*, 52 A.D.2d 197, 201, 383 N.Y.S.2d 39 (1st Dept. 1976). (If defendant makes constant oral objections to plaintiff, which are accepted and acted upon, there may be questions as to whether plaintiff waived his right to insist upon timely written objections.) A failure to object raises the presumption of an agreement as to the correctness of the account. *Parker, Chapin v. Daelen Corp.*, 59 A.D.2d 375, 399 N.Y.S.2d 222 (1st Dept. 1977); *See* also *Marotta v. Coratti*, 76 A.D. 2d 943, 428 N.Y.S.2d 754 (3rd Dept.1980). If defendant received plaintiff's accounts and did not expressly assent, but failed to object within a reasonable time, then he is bound by that account stated unless fraud, mistake, or another equitable consideration is present. *Fink, Weinberger v. Petrides*, 80 A.D.2d 781, 437 N.Y.S.2d 1 (1st Dept. 1981); *Chisholm–Ryder Co. v. Sommer & Sommer*, 70 A.D.2d 429, 421 N.Y.S.2d 455 (4th Dept.1979). In this action defendant received several account statements from plaintiff. Defendant never objected until this action was commenced. The belated objections are insufficient to contest the account stated and do not raise a genuine issue of material fact warranting dismissal of a motion for summary judgment. *Ro-senman Colin Freund Lewis & Cohen v. Neuman*, 93 A.D.2d 745, 461 N.Y.S.2d 297 (1st Dept.1983).

■ Further evidence in support of an account stated and defendant's failure to object are the checks which were executed and delivered by defendant to plaintiff on this debt. A check prepared for payment is an admission of indebtedness. That payment constitutes an acknowledgment of the validity of the debt establishing it as an account stated. *Parker, Chapin*, 59 A.D.2d at 378, 399 N.Y.S.2d 222; *Rik Shaw Associates v. Bronzini Shops*, 22 A.D.2d 769, 253 N.Y.S.2d 596 (1st Dept.1964); *Milstein v. Montefiore Club of Buffalo*, 47 A.D.2d 805, 365 N.Y.S.2d 301 (4th Dept. 1975). Defendant executed four checks on the Merchants Bank of New York (# 15242, 43, 44, 45) totalling 80,065 francs payable to plaintiff. Plaintiff deposited these checks which were not honored. Defendant claims that issuance of the checks were a mistake and that their dishonor was not due to a stop payment order but was instead fortuitous. Regardless of the reason for dishonor, defendant issued checks on April 25, 1986 to cover an indebtedness which arose in October, 1985. There had been several demands for payment by plaintiff but no objection made by defendant to the goods. Accordingly, plaintiff's request for payment constituted an account stated and defendant's failure to object until this action commenced and the issuance of the checks for payment support that conclusion. Defendant's contention that the checks issuance were a mistake is insufficient to excuse him from liability. The president of defendant corporation, Simun Simunovic, asserts that defendant did not stop payment on the checks but because of the dispute over the return of goods defendant opted to hold them after they were fortuitously returned from the bank "refer to maker". Simunovic affidavit p. 6, ¶ 9. If defendant held the checks upon their return because of a dispute than it would be contradictory to indicate that an account was not stated or that the checks were issued in error as there was no stop payment order made to the bank. The evi-

dence indicates that the checks were voluntarily delivered with an intent to paying the account in full on the basis of the statement tendered, notwithstanding any reservations defendant had regarding its reasonableness. The delivery of the checks was not the result of fraud, mistake or duress. *Hansen v. Abbot,* 187 Neb. 248, 188 N.W. 2d 717 (1971). Therefore, plaintiff is entitled to relief based on an account stated.

■ The third and final claim plaintiff asserts is that it is entitled to relief because of a wrongful dishonor of a draft. The New York Uniform Commercial Code states that if a payment made between original parties is dishonored, an action may be maintained on either the instrument or the obligation. N.Y.U.C.C. 2–511, 3–802(1); *Mansion Carpets, Inc. v. Marinoff,* 24 A.D.2d 947, 265 N.Y.S.2d 298 (1st Dept.1965). Lack of acceptance by the drawee bank is not a valid defense to an action brought by a payee against a drawer to recover on the draft. *Baum v. Cotton Mutual Insurance Company,* 141 Ga.App. 636, 234 S.E.2d 178 (1977). The defendant executed and delivered four checks to the plaintiff. The plaintiff properly presented those checks. The checks were dishonored. Defendant has subsequently failed to honor those checks or execute new ones to pay its obligations. Consequently, plaintiff is entitled to relief on its claim of wrongful dishonor.

■ Defendant asserts a partial defense to plaintiff's claims asserting that the contract limiting the return of defective merchandise to 90 days is "unconscionable" and that a party is entitled to a "reasonable" time to inspect goods upon their receipt and reject them for non-conformance.

It is defendant's contention that the plaintiff is a huge, international corporation which controls all aspects of marketing and distribution of its products. This is further substantiated, according to defendant, by the unremitting pressure it puts on small distributors like itself to agree to terms which are completely unfavorable and which undermine the self-sufficiency of the small businessman who are at the mercy of the large corporations. What defend-

ant fails to indicate is that plaintiff is not the sole source of these products. Defendant is not forced to contract with plaintiff but does so voluntarily. As a private corporation defendant has the option of marketing plaintiff's products or dealing with several hundred other manufacturers of similar products. N.Y.U.C.C. 2–302 Comment I states:

> The basic test [for unconscionability] is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract ... the principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power.

By defendant's own admission, it has extensive experience in dealing with plaintiff and has knowledge of the terms and conditions of the industry. Additionally, defendant should not feel oppressed nor surprised in having to pay for products that were ordered by it. Similarly, defendant contends that there is an absence of meaningful choice. This is contrary to the documents submitted by defendant in opposition to this motion. Defendant's documents indicate that there are several other manufacturers with whom it contracts. It would be unwise for this Court to assume that defendant would stay in a business where it is at the mercy of all its suppliers. A claim of superior bargaining power does not constitute unlawful coercion or duress. Certainly defendant has negotiated with these other sources as it has with plaintiff in regard to price, delivery and returns. *Fleischmann Distilling Corp. v. Distillers Co., Ltd.,* 395 F.Supp. 221, 230–33 (S.D.N.Y.1975); *State v. Avco Financial,* 50 N.Y.2d 383, 429 N.Y.S.2d 181, 406 N.E.2d 1075 (1980); *Wilson Trading v. David Ferguson, Ltd.,* 23 N.Y.2d 398, 297 N.Y.S.2d 108, 244 N.E.2d 685 (1968); *Cayuga Harvester Inc. v. Allis–Chalmers Corp.,* 95 A.D.2d 5, 20–21 (4th Dept.1983). One of the better definitions

of the concept of unconscionability may be found in *State of New York v. General Motors Corp.*, 120 Misc.2d 371, 466 N.Y.S. 2d 124 (N.Y.Cty.1983), where the Court realistically views an unconscionable contract as one which no person in his right senses would make and which no honest or fair man would accept. *Id.* at 374, 466 N.Y.S. 2d 124. Certainly, that is not the present situation.

■ Finally, defendant asserts that it is entitled to a "reasonable" time to inspect the products. Directing the Court's attention to N.Y.U.C.C. 1–204(2) the defendant notes that what is a reasonable time within which to return defective goods depends upon the nature, purpose and circumstances of any such action. The defendant argues that it frequently does not learn of defective merchandise until long after it has re-shipped the goods to the retail outlets and that plaintiff should be presumed to have knowledge of this practice because of its extensive involvement in the industry. Consequently, defendant should be excused from complying with the 90 day written notice requirement of the contract. N.Y.U.C.C. 1–204 states:

(1) Whenever this Act requires any action to be taken within a reasonable time, any time which is not manifestly unreasonable may be fixed by agreement.

(2) What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action.

(3) An action is taken "seasonably" when it is taken at or within the time agreed or if no time is agreed at or within a reasonable time.

The Official Comments to § 1–204 explicate on "reasonableness" by recognizing "that nothing is stronger evidence of a reasonable time than the fixing of such time by a fair agreement ... [and] that the agreement which fixes the time need not be part of the main agreement, but may occur separately." The commentary leaves the court to ascertain what is reasonable under the circumstances.

The contract for the sale of goods required written notification of defects within 90 days of receipt of the goods. Defendant contends that this is an unreasonable time period and alternatively, the contract requires only written notice within 90 days and that oral notice of defect after this period is reasonable and should be accepted. In *Sherkate Sahami Khass Rapol v. Henry R. Jahn & Son, Inc.*, 701 F.2d 1049 (2d Cir.1983), it was held that because the plaintiff could not inspect the goods for an extensive period of time, it was reasonable under the circumstances to permit delayed rejection. While generally what is a reasonable time to give notice is a question of fact and not of law there are exceptions. *Id.* at 1051. In *Bangor Clothing Co. v. Superior Sportswear Corp.*, 22 A.D.2d 864, 254 N.Y.S.2d 415 (1st Dept.1964), *aff'd*, 16 N.Y.2d 1018, 265 N.Y.S.2d 901, 213 N.E.2d 312 (1965), the court held that where a claim of defects was not made until commencement of the action and the vendee continued to make payment on account with knowledge of the defects this was an unreasonable delay. This exception was duly noted by the Second Circuit in *Sherkate* (pp. 1051–52) and is applicable to the instant action. Defendant incorporated its objection for the first time in its answer to this action. Moreover, defendant paid on the account only to subsequently stop payment. There is no indication that the contract in *Sherkate* provided a time limitation for notification of defects as does the instant contract. The Court does not agree with defendant that this case may be distinguished from *Prompt Electrical Supply Co., Inc. v. Allen–Bradley Company*, 492 F.Supp. 344, 347–48 (E.D.N.Y.1980). In *Prompt* oral notice was insufficient since the terms of sale require written notice. Defendant would like to disregard that provision of the contract which requires written notice and have this Court substitute an open ended policy of oral notice in its stead. We find Judge Neaher's decision in *Prompt* appropriate under the facts of this matter. If a contract, duly bargained and negotiated, requires written notice then only under the most extraordinary and prejudicial of circumstances would this

Court set that provision aside. For the preceding reasons the 90 day provision is reasonable and enforceable.

As discussed earlier Fed.R.Civ.P. 56 requires that the party opposing the motion for summary judgment present some evidence which supports the bald assertion that there is a dispute. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985) *cert. denied* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Donnelly v. Guion,* 467 F.2d 290, 293 (2d Cir.1972).

In conclusion, defendant asserts that the contract was unconscionable, trade practice permitted a longer period in which to return goods, the 90 day provision was unreasonable, and the parties had prior oral and written agreements controlling the time limitations on returns. Plaintiff argues, however, that the contract is clear on its face and should be enforced. When a contract is unambiguous the doctrine of parol evidence precludes contradictory evidence which disputes its terms. Similarly, when evidence of custom and usage is required to interpret an agreement, summary judgment is not appropriate. Evidence of industry practice may not be used to vary terms that clearly set forth the rights and obligations of the parties. *Bellefonte Re Insurance, Co. v. Argonaut Insurance, Co.,* 757 F.2d 523, 528 (2d Cir.1985).

The contract between plaintiff and defendant is clear and unambiguous. The provision requiring written notification of defects within 90 days is a reasonable time limitation under the circumstances. It is the non-moving party that bears the burden of "setting forth specific facts showing that there is a genuine issue for trial." F.R.C.P. 56(e); *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553. Defendant has failed to do so.

Therefore, for the reasons articulated above the plaintiff's motion for summary judgment is granted. Defendant's counterclaim for storage fees is dismissed as he is not entitled to return the goods. Plaintiff is entitled to judgment against defendant for 80,065.00 French francs plus interest to be converted to U.S. Dollars on the date of judgment.

SO ORDERED.